# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PAUL E. COX, | ) |
| Plaintiff, | ) |
| | ) No. 14-cv-10456 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| DEANNA L. ZALAS, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

In May 2009, Plaintiff Paul Cox was injured while performing his duties as a police officer for the Cook County Sheriff's Police Department. Due to the injury, Cox was receiving temporary benefits and also applied to the Cook County Pension Fund ("Fund") for permanent disability benefits.[1] But Cox's temporary benefits were terminated in May 2014 and his request for permanent benefits was not processed. Accordingly, Cox has filed this lawsuit alleging violations of his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Before this Court is Defendants' motion to dismiss his Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Dkt. No. 66.) For the reasons explained below, the motion is granted in part and denied in part.

---

[1] The Court uses the term "temporary benefits" to refer to disability benefits, worker's compensation, or both (depending on the context) that Cox was receiving prior to the alleged termination of those benefits on May 6, 2014. The Court uses the term "permanent disability benefits" to describe the benefits that Cox was attempting to obtain from the Fund starting with his 2013 application.

## BACKGROUND[2]

In May 2009, Cox, an officer with the Sheriff's Police Department, suffered an injury in the line of duty for which he required surgery. (SAC ¶¶ 13, 14, Dkt. No. 43.) He was on injured on-duty status for some time afterwards. (*Id.* ¶ 15.) In 2012, Cox reached the maximum point of his expected physical improvement from the surgery and rehabilitation but still had a 25-pound restriction on lifting with his right arm. (*Id.* ¶ 16.) He returned to work on light-duty status but soon exhausted his eligibility for such work. (*Id.* ¶¶ 19, 20.) Cox's status was then changed back to "injury on duty" and his temporary benefits were reinstated. (*Id.* ¶ 21.)

Around June 2013, Cox submitted an application to the Fund seeking permanent disability benefits. He also filed a workers' compensation claim; this was required to obtain permanent disability benefits. (*Id.* ¶¶ 23, 24.) In April 2014, the Sheriff's Police Department offered Cox two positions that would accommodate his physical restrictions. However, those positions were not with the Sherriff's Police Department, so Cox refused them. As a result, Cox's temporary benefits were terminated. (*Id.* ¶¶ 25–27, 29.) At the end of 2014, Cox provided the Fund with a copy of the settlement agreement for his worker's compensation claim. And in 2015, Cox received various letters from the Fund that made him believe he was about to receive permanent benefits. As it turned out, however, the Fund did not consider Cox to have an open application for permanent benefits. (*Id.* ¶¶ 31, 33, 35.)

At some point Cox learned that his application for permanent benefits was not open. He does not allege when he learned this, but it is clear that he did because he subsequently filed a new application for permanent benefits in 2016. (*Id.* ¶ 36.) In order to have the application processed, Cox had to provide a document completed by an attending physician—the document

---

[2] For purposes of the instant motion, the Court accepts the facts alleged in the SAC as true and draws all inferences in Cox's favor. *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014).

known as the Attending Physician Statement. Cox acknowledges that he did not submit the required document but contends that he needed a claim number to submit the document and he was not provided with one. (*Id.* ¶¶ 37, 38.)

Cox now brings the following claims—all based on the Due Process Clause. Count I asserts a claim against Defendant Deanna Zalas, in her official capacity as the Director of the Cook County Department of Risk Management, alleging that Cox's due process rights were violated because his temporary benefits were paid late. Notably, Cox does not claim that he did not receive the temporary benefits, just that the payments were delayed. (*Id.* ¶¶ 40–47.) Count II also asserts a claim against Zalas, but in her individual capacity rather than her official capacity. It alleges that Zalas terminated Cox's temporary benefits without advising him of his right to notice and a hearing. (*Id.* ¶¶ 48–52.) Finally, Count III asserts a claim against Defendants Alexis Herrera, Patrick J. McFadden, Diahann Goode, John E. Fitzgerald, Brent Lewandowski, Patrick Nester, Lawrence L. Wilson, Joseph Nevius, and Dennis White, in their official capacities as Trustees of the Fund. Cox claims that the Trustees violated his due process rights because his application for permanent benefits was not processed in a timely manner. (*Id.* ¶¶ 53–60.)[3] Defendants have moved to dismiss all of these claims.

## DISCUSSION

### I. Legal Standard

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

---

[3] The SAC also contains a fourth count, which asserts a claim against Cook County for indemnification based on the claims against its employees in Counts I–III.

550 U.S. 544, 570 (2007).[4] A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In analyzing a Rule 12(b)(6) motion, the Court "must construe [the complaint] in the light most favorable to the plaintiff, accept well-pleaded facts as true, and draw all inferences in the plaintiff's favor." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014) (internal citations omitted).

In considering the sufficiency of a due process claim under the Fourteenth Amendment, the Court must determine: (1) whether the plaintiff was deprived of a protected interest, and (2) what process is due. *Leavell v. Illinois Dep't of Nat. Res.*, 600 F.3d 798, 804 (7th Cir. 2010).

## II. Delay in Temporary Benefits Payments (Count I)

In Count I of the SAC, Cox alleges that his temporary benefits were delayed. He attributes those delays to Zalas, who was the Director of the Cook County Department of Risk Management. Cox claims that, as a policymaker for the department, Zalas failed to ensure that his payments were timely. In seeking dismissal of Count I, Defendants argue that Cox did not have a protected interest in receiving temporary benefits without delay.

"A disability benefit that is a matter of right, not of grace, is a property right within the meaning of the due process clause." *Schroeder v. City of Chicago*, 927 F.2d 957, 959 (7th Cir.

---

[4] Defendants have also moved to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. (*See, e.g.*, Defs.' Mot. to Dismiss at 4, Dkt. No. 66.) Defendants claim that the only basis for this Court to exercise jurisdiction over Cox's complaint is the federal question presented by the alleged denial of due process. But, Defendants argue, "in order to be denied due process, Cox must have been legally entitled to a property right under state law," and Cox was not. Defendants' jurisdictional argument is misguided. The due process claim presents a federal question; whether Cox can show the existence of a protected property interest is merely an element of the due process claim. Subject-matter jurisdiction concerns "the competence of the tribunal"—*i.e.*, its "legal empowerment to decide a case." *In re IFC Credit Corp.*, 663 F.3d 315, 319 (7th Cir. 2011). It is not about whether a plaintiff satisfied an element of a claim, which is what Defendants essentially argue here.

1991). "If [a person] received [a benefit] after he was *entitled* to receive it, then he was deprived of an entitlement, and entitlements are what the due process clause has been held to protect in the name of 'property.'" *Id.* (emphasis in original). To use an example from *Schroeder*, if a plaintiff is entitled to receive $1,000 on May 1 but received it on May 2, there has been a deprivation of an entitlement. "It is a limited, temporary, and easily reparable deprivation—the loss, in effect, of a day's interest on $1,000, which is less than a dollar. But it is a deprivation nevertheless, and we may assume that it would be actionable." *Id.*

But property rights are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Lee v. Cty. of Cook*, 862 F.2d 139, 141 (7th Cir. 1988) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). And Cox cites no law or other authority to support his entitlement to receive temporary benefits and therefore provides no basis from which it can be established that he was entitled to receive those benefits on any particular schedule. The SAC is silent as to why any certain payment schedule had to be followed but instead alleges only that Cox encountered delays in payments. (*See, e.g.*, SAC ¶ 28, Dkt. No. 33 ("Instead of receiving a disability payment every two weeks, at various times Cox would only receive a disability payment every 4 weeks and on at least one occasion went 5 weeks between receiving disability payments.").) Thus, even viewed in the light most favorable to Cox, the SAC fails plausibly to allege that Cox was entitled to receive benefits on a certain schedule. *See Schroeder*, 927 F.2d at 960 (affirming district court's granting of a motion to dismiss where the plaintiff pointed to no source of positive law for an entitlement to be awarded disability benefits within a particular time period). At some point a delay in benefits may become so egregious that it "must ripen into deprivation, because otherwise a suit

5

alleging deprivation would be forever premature." *Id.* But that is not the case here, as the delays were only several weeks. *See, e.g.*, *id.* (holding that an eight-month delay in awarding benefits was not so egregious as to ripen into deprivation).

Cox thus has failed to allege the deprivation of a protected interest in the receipt of temporary benefit payments on a certain schedule. Count I is dismissed. However, the Court declines to conclude that it would be impossible for Cox to allege such a deprivation. Thus, Cox may attempt to cure the deficiencies in Count I by amending his complaint.

### III.     Delay in Processing Permanent Benefits Application (Count III)

Similar to Count I, Count III concerns alleged delays in the receipt of benefits. But this time, Cox alleges that the Trustees of the Fund did not process his application for permanent benefits in a timely fashion. Cox also alleges that the Trustees failed to notify him that his initial application had not been opened and did not provide him with an opportunity to challenge the Fund's determination that he would not receive permanent benefits.

Here again, Cox cites no source of positive law to support his entitlement to a certain processing time. So even if Cox properly applied for the permanent benefits, his complaint is insufficient. But the SAC explicitly acknowledges that Cox did ***not*** apply for the benefits properly. The SAC states that, "[a]s part of processing a permanent duty disability pension application, the employee needs to have an attending physician complete the Attending Physician Statement." (SAC ¶ 37, Dkt. No. 43.) Cox did not submit the required statement. (*Id.* ¶ 38.) Hence, according to the SAC itself, the application was incomplete.[5] And if Cox's application was incomplete, it is unclear why the Fund was required to take any action related to his application.

---

[5] Cox alleges that he did not submit the statement because he did not have a claim number required for the submission. (Compl. ¶ 37, Dkt. No. 43.) But he cites no authority for such requirement and the SAC is silent as to why he did not have the number.

6

Cox provides no basis from which to conclude that the Fund had to notify him that the application was not opened if his application was incomplete.

In sum, Cox has failed to allege the deprivation of a protected property interest in connection with the delay in processing his permanent disability benefits. Count III is thus dismissed, albeit without prejudice.[6]

**IV. Termination of Temporary Benefits (Count II)**

In Count II, Cox alleges that Zalas sent him a notice terminating his temporary benefits without informing him of his right to a notice and a hearing on the termination. For reasons discussed above, Cox may claim a protected property interest in the receipt of benefits to which he was entitled. For purposes of their motion to dismiss, Defendants have not argued that the termination of Cox's temporary benefits did not constitute the deprivation of a protected interest.[7] Instead, Defendants' challenge to Count II focuses on the second prong of the due process claim—the nature and extent of the process to which Cox was entitled prior to termination of his temporary benefits.

In evaluating what process is due, "the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Leavell*, 600 F.3d at 804 (quoting *Rivera–Powell v. New York City Bd.*

---

[6] Defendants also argue that Cox has failed to allege enough facts to support his claims in Counts I and III pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Due to the dismissal of those counts on other grounds, it is unnecessary for the Court to address the additional *Monell* arguments now. However, if Cox takes the opportunity to amend his complaint to cure the deficiencies discussed in this opinion, it would behoove him to bolster his *Monell* allegations as well.

[7] Defendants' motion to dismiss frames their argument as "[a]ssuming Cox had a property right in the receipt of [temporary benefits], the next step is to determine 'what process is due.'" (Defs.' Mot. to Dismiss at 7, Dkt. No. 66.) The motion then goes on to argue the process due to Cox. (*See id.* at 7–9.) Although Defendants' reply brief contains the heading "Counts I & II Against Deanna Zalas — No positive law creating a property interest," it does not advance any such argument with respect to Count II. Instead, like the opening brief, the reply brief focuses on what process was due to Cox. (Defs.' Reply at 2–5, Dkt. No. 75.)

*of Elections*, 470 F.3d 458, 465 (2d Cir. 2006)). In cases of deprivation pursuant to an established state procedure, "the state can predict when [the deprivation] will occur and is in the position to provide a pre-deprivation hearing." *Id.* at 805 (internal quotation marks omitted). So "the availability of post-deprivation procedures will not, *ipso facto,* satisfy due process." *Id.* (internal quotation marks omitted). But for cases of random and unauthorized conduct, "the state satisfies procedural due process requirements so long as it provides [a] meaningful post-deprivation remedy." *Id.* In such cases the plaintiff must either pursue his or her state post-deprivation remedies before resorting to a lawsuit or demonstrate that the available remedies are inadequate. *Id.*

Here, if Cox's claim against Zalas is based on a random, unauthorized act and there are state post-deprivation remedies available, Cox must avail himself of those remedies or explain why they are inadequate. But if Cox claims that Zalas deprived him of a protected property interest through the application of established procedures, then the availability of post-deprivation remedies would not automatically satisfy due process and the Court would proceed to determine what process was due. Defendants argue that Count II is based on a random, unauthorized act, that there are various state post-deprivation remedies available to Cox, and that Count II should be dismissed because Cox failed to exhaust those state remedies or allege their insufficiency.

The SAC alleges that Zalas was a policymaker for the Department of Risk Management, and that she sent a notice terminating Cox's benefits without informing him of his right to notice and a hearing regarding the termination. Reading those allegations in the light most favorable to Cox, the SAC plausibly suggests that Zalas followed an established procedure when she sent the allegedly deficient notice. After all, the SAC alleges that Zalas was in charge of such procedures. The Court can reasonably infer that giving notice of the termination of benefits was a part of her

8

job and not a one-off, random and unauthorized act where Zalas broke established rules. *See, e.g.*, *Leavell*, 600 F.3d at 805 (stating that the complaint made it clear that the claim was based on a random and unauthorized conduct where the law expressly required a certain type of service prior to a hearing and where no such service was done). Thus, Cox has adequately alleged that post-deprivation remedies would not automatically satisfy due process here.

That said, as the case develops, the evidence might show that there was a random and unauthorized act here. For example, it is possible that discovery will show that there was an established procedure for providing proper notice and a hearing, and that Zalas violated that procedure in Cox's case in a random and unauthorized manner. Then, perhaps, the issue might be proper for a summary judgement. But at this time, it would be premature to conclude that Cox's claim is based on a random and authorized act.

Furthermore, the sufficiency of the process afforded Cox is also a question for another day. The Court would have to apply the three-factor test in *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976), to determine whether existing procedures are constitutionally sufficient. But Defendants reserved any argument based on the *Mathews* test until summary judgment. (*See* Defs.' Reply at 5, Dkt. No. 75.) Hence, this issue is not in front of the Court on the instant motion to dismiss.[8]

### V. Damages

Defendants also argue that the Seventh Circuit's decision in *Dargis v. Sheahan*, 526 F.3d 981 (7th Cir. 2008), forecloses Cox from receiving money damages for his procedural due process claims. In *Dargis*, the plaintiff had been placed on unpaid leave by the Sheriff's Office without

---

[8] It is unclear whether Cox intended to assert a *Monell* claim under Count II (or whether Cox intended to assert a *Monell* claim for termination of his temporary benefits in Count I). If so, he must clearly plead it —the Court is not required to guess or speculate regarding the nature of his claims.

first receiving a hearing. The Seventh Circuit held that it was proper for the district court, at the summary judgment stage, to direct the Sheriff's Merit Board to conduct a hearing instead of proceeding to trial on damages. *Id.* at 990.

It appears that Defendants view *Dargis* as holding that money damages are inappropriate for procedural due process violations in general. But such an interpretation ignores Seventh Circuit precedent regarding the proper relief for due process violations, which plainly provides for damages. *See, e.g.*, *Alston v. King*, 231 F.3d 383, 386 (7th Cir. 2000) (explaining that "damages for a procedural due process violation can include damages for a termination if there is a causal connection between the termination and the failure to provide a hearing" and that even where the employer can prove that the employee would have been terminated even if a proper hearing had been given, "the employee may still obtain damages for emotional distress attributable to the deficiencies in procedure"); *see also McGreal v. Vill. of Orland Park*, No. 12-cv-05135, 2013 WL 3984477, at *4 (N.D. Ill. Aug. 2, 2013) (holding that the conclusion of the arbitration hearing and the determination by an arbitrator that the plaintiff was terminated for just cause does not moot plaintiff's request for damages for a due process violation; while the plaintiff could not recover damages for his termination, he might be able to recover damages for injury caused by the alleged denial of due process).

Moreover, Defendants overstate the holding in *Dargis*. The *Dargis* Court did not forbid the district court from awarding damages but only affirmed the district court's holding that the Merit Board could "better" determine whether the plaintiff's leave was justified. *Dargis*, 526 F.3d at 990. Significantly, the district court had already found that the plaintiff was unable to perform his job (this finding was pertinent to another claim in the case), and thus "if the district court was the entity to consider whether [plaintiff's] leave was justified, it would be placed in the

first receiving a hearing. The Seventh Circuit held that it was proper for the district court, at the summary judgment stage, to direct the Sheriff's Merit Board to conduct a hearing instead of proceeding to trial on damages. *Id.* at 990.

It appears that Defendants view *Dargis* as holding that money damages are inappropriate for procedural due process violations in general. But such an interpretation ignores Seventh Circuit precedent regarding the proper relief for due process violations, which plainly provides for damages. *See, e.g.*, *Alston v. King*, 231 F.3d 383, 386 (7th Cir. 2000) (explaining that "damages for a procedural due process violation can include damages for a termination if there is a causal connection between the termination and the failure to provide a hearing" and that even where the employer can prove that the employee would have been terminated even if a proper hearing had been given, "the employee may still obtain damages for emotional distress attributable to the deficiencies in procedure"); *see also McGreal v. Vill. of Orland Park*, No. 12-cv-05135, 2013 WL 3984477, at *4 (N.D. Ill. Aug. 2, 2013) (holding that the conclusion of the arbitration hearing and the determination by an arbitrator that the plaintiff was terminated for just cause does not moot plaintiff's request for damages for a due process violation; while the plaintiff could not recover damages for his termination, he might be able to recover damages for injury caused by the alleged denial of due process).

Moreover, Defendants overstate the holding in *Dargis*. The *Dargis* Court did not forbid the district court from awarding damages but only affirmed the district court's holding that the Merit Board could "better" determine whether the plaintiff's leave was justified. *Dargis*, 526 F.3d at 990. Significantly, the district court had already found that the plaintiff was unable to perform his job (this finding was pertinent to another claim in the case), and thus "if the district court was the entity to consider whether [plaintiff's] leave was justified, it would be placed in the

incongruous position of considering whether to award . . . lost wages [to the plaintiff] for a job it had found him unable to perform." *Id.* at 990. Nothing in *Dargis* prevents a court from awarding monetary damages for due process violations in an appropriate case or otherwise calls into question the precedent allowing such damages. Hence, the Court rejects Defendants' arguments that money damages are unavailable to Cox as a matter of law.

## CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss is granted in part and denied in part. The motion is granted with respect to Counts I and III; those counts are dismissed without prejudice. The motion is denied with respect to Count II. Cox will have 21 days from the issuance of this Memorandum Opinion and Order to file a Third Amended Complaint to address the deficiencies identified above.

ENTERED:

Dated: January 16, 2018

_____
Andrea R. Wood
United States District Judge